UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED:
```

---

SAADIQ RODGERS-KING,

                  Plaintiff,

            v.

CANDY DIGITAL INC.,

                  Defendant.

No. 23-cv-2591 (RA)

MEMORANDUM
OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

Plaintiff Saadiq Rodgers-King brings this action against his former employer, Candy Digital, Inc. ("Candy"). Rodgers-King alleges that he was discriminated against on the basis of his race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; 42 U.S.C. § 1981; the New York State Human Rights Law; and the New York City Human Rights Law. Rodgers-King also claims that Candy committed securities fraud in violation of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b). Finally, Rodgers-King brings state law claims of fraudulent misrepresentation and inducement, defamation per se, and intentional infliction of emotional distress.[1] Candy moves to dismiss all of Rodgers-King's causes of action, except for the race discrimination claims, pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, Candy's motion is granted.

## BACKGROUND

The facts in this section and throughout are taken from Rodgers-King's Amended Complaint and are assumed to be true for the purposes of this motion. *See Stadnick v. Vivint Solar,*

---

[1] Originally, Rodgers-King also brought a claim for negligent misrepresentation, but did not do so in his Amended Complaint. *See* Amended Complaint ("Am. Compl."), Ex. B.

*Inc.*, 861 F.3d 31, 35 (2d Cir. 2017). Rodgers-King, an African American man, is a former employee of Candy, a digital collectibles technology company. Am. Compl. ¶¶ 9, 82. He first interviewed with Candy in early November of 2021, *id.* ¶ 14, and on December 20, 2021, he received an offer to be Vice President of Product, *id.* ¶ 19. The offer letter promised a salary of $325,000 and a signing bonus of $20,000. *Id.* He was also granted an initial equity award of 110,000 shares in stock options that would vest over 4 years with a 1-year cliff. *Id.* According to Rodgers-King, the stock options were central to his decision to leave his former job and move to Candy. *Id.* ¶ 20.

During the application process, Rodgers-King was informed by Mat Laibowitz, Rodgers-King's initial manager, that he would have the entire product management department reporting to him. *Id.* ¶ 65. After Rodgers-King committed to joining Candy, he was also told by Anthony Fitzgerald, Candy's Head of People, that he was guaranteed to be the head of the product organization. *Id.* ¶ 21. In that same conversation, however, Fitzgerald informed him that there would be another Vice President of Product and both would report to Laibowitz. *Id.* Rodgers-King was also asked by Fitzgerald if he would prefer the title "Head of Product," but Rodgers-King did not think it was necessary given that he was already Vice President of Product. *Id.*

Rodgers-King began working at Candy on January 10, 2022. *Id.* ¶ 19. Soon after, he had a meeting with Lydia Kim, who had interviewed him, and he learned that several people had been hired in project management roles. *Id.* ¶¶ 27–28. Kim told Rodgers-King that the new project management employees had all interviewed for the same role and that Candy wanted to try them all. *Id.* ¶ 28. In late January of 2022, Rodgers-King further learned that one of the new hires, Janelle Pacheco Winowich, a Hispanic woman, had been hired as Head of Product. *Id.* ¶¶ 28, 30.

Laibowitz assured Rodgers-King that both he and Winowich were equals and that both reported to Laibowitz. *Id.* ¶¶ 30–31.

On February 9, 2022, there was a reorganization of the product management team, and it was announced that all product managers, including Rodgers-King, would report to Winowich. *Id.* ¶¶ 44–46. Rodgers-King alleges that he was more qualified for the role than Winowich. *Id.* ¶ 37. He also alleges that while the non-African American product managers were given the resources needed to succeed in the role, he was not. *Id.* ¶ 47. On May 6, 2022, Rodgers-King was terminated. *Id.* ¶ 60. After being fired, a former co-worker told Rodgers-King that he had heard the termination was due to Rodgers-King's poor performance, while another had heard it was a mutual separation. *Id.* ¶ 63.

Rodgers-King claims that he was discriminated against based on his race by being subject to unequal treatment and adverse employment actions. *Id.* ¶¶ 82, 96, 103. He alleges that unlike non-African Americans, he was deceived about his role, excluded from key business discussions, prevented from obtaining the resources needed to complete his job, not promoted to the Head of Product role, and terminated without cause while other similarly situated non-African American employees were retained. *Id.* ¶¶ 84, 90. Rodgers-King also claims that Candy violated § 10(b) of the Securities Exchange Act of 1934 by offering him stock options while making misrepresentations regarding his position. *Id.* ¶¶ 109–114. Rodgers-King further maintains that the misrepresentations about his role constituted fraudulent misrepresentation and inducement, *id.* ¶¶ 121–23, as well as that Candy made false statements about him which constituted defamation per se, *id.* ¶¶ 132–33. Finally, he asserts that Candy intentionally inflicted emotional distress through its discriminatory conduct. *Id.* ¶ 141.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted). On a Rule 12(b)(6) motion, the question is "not whether [the plaintiff] will ultimately prevail," but "whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 529–30 (2011). In answering this question, the Court must "accept[] all factual allegations as true, but giv[e] no effect to legal conclusions couched as factual allegations." *Stadnick*, 861 F.3d at 35 (internal quotation marks omitted).

## DISCUSSION

In its motion to dismiss, Candy contends that Rodgers-King has failed to state a claim for securities fraud, fraudulent misrepresentation and inducement, defamation per se, and intentional infliction of emotional distress. Defendant's Memorandum in Support of its Partial Motion to Dismiss ("Def. Mot.") at 1. The Court agrees with Candy and thus dismisses Counts Five through Eight of the Amended Complaint.

### I.    Securities Fraud

Section 10(b) of the Securities Exchange Act of 1934 renders it unlawful "[t]o use or employ, in connection with the purchase or sale of any security[,] . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission

may prescribe as necessary or appropriate in the public interest or for the protection of investors."

15 U.S.C. § 78j(b). Implementing this provision, SEC Rule 10b-5 prohibits "mak[ing] any untrue

statement of a material fact . . . in connection with the purchase or sale of any security." 17 C.F.R.

§ 240.10b-5(b). "To state a claim under Rule 10b-5 for misrepresentations, a plaintiff must allege

that the defendant (1) made misstatements or omissions of material fact, (2) with scienter, (3) in

connection with the purchase or sale of securities, (4) upon which the plaintiff relied, and (5) that

the plaintiff's reliance was the proximate cause of its injury." *Employees' Ret. Sys. of Gov't of the

Virgin Islands v. Blanford*, 794 F.3d 297, 305 (2d Cir. 2015) (quoting *ATSI Commc'ns, Inc. v.

Shaar Fund, Ltd.*, 493 F.3d 87, 105 (2d Cir. 2007)).

In bringing a securities fraud claim, a plaintiff must also comply with Federal Rule of Civil

Procedure 9(b)'s heightened pleading standard, which provides that, "[i]n alleging fraud or

mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed.

R. Civ. P. 9(b); *see also ATSI Commc'ns, Inc.*, 493 F.3d at 99 ("Securities fraud claims are subject

to heightened pleading requirements that the plaintiff must meet to survive a motion to dismiss.").

To comply with Rule 9(b), "[a] securities fraud complaint based on misstatements must (1) specify

the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where

and when the statements were made, and (4) explain why the statements were fraudulent." *Id.* at

99; *Diesenhouse v. Soc. Learning & Payments, Inc.*, 2022 WL 3100562, at *4 (S.D.N.Y. Aug. 3,

2022) (same).

According to Rodgers-King, Candy made misrepresentations by promising him "full

oversight over the product organization," deceiving him "about the role that he would play" at

Candy, and committing to put him "in charge of 'crypto products.'" Am. Compl. ¶ 114. The

Amended Complaint, however, fails to identify the speaker or state when and where the statements

were made, and thus lacks the requisite specificity to satisfy Rule 9(b). *See AIG Glob. Sec. Lending Corp. v. Banc of Am. Sec. LLC*, 254 F. Supp. 2d 373, 388 (S.D.N.Y. 2003) (holding that "vague pleading[s], unaccompanied by any specific details about where, when or by whom any representations . . . were made, fall[] far short of the requirement imposed by Fed.R.Civ.P. 9(b) that fraud allegations be pleaded with particularity"); *cf. Employees' Ret. Sys. of Gov't of the Virgin Islands*, 794 F.3d at 306 (finding pleadings adequate where the complaint alleged "specific misleading statements by Defendants . . . , the identity of the speakers, and where and when the statements were made").

Even if the Amended Complaint satisfied Rule 9(b) in that regard, however, Rodgers-King has not plausibly alleged that any misrepresentations were made in connection with the sale of securities. "To satisfy the 'in connection with' requirement, [a] plaintiff may not allege fraudulent acts which merely happened to involve securities in some way. The 'in connection with' requirement mandates that the alleged fraud concern the fundamental nature of securities: namely, the characteristics and attributes that would induce an investor to buy or sell the particular securities." *Citibank, N.A. v. K-H Corp.*, 745 F. Supp. 899, 903 (S.D.N.Y. 1990) (quoting *Kearney v. Prudential-Bache Sec. Inc.*, 701 F. Supp. 416, 424 (S.D.N.Y. 1988)) (cleaned up). Accordingly, although § 10(b) and Rule 10b-5 "impose liability for a proscribed act in connection with the purchase or sale of a security[,] it is not sufficient to allege that a defendant has committed a proscribed act in a transaction of which the pledge of a security is a part." *Chem. Bank v. Arthur Andersen & Co.*, 726 F.2d 930, 943 (2d Cir. 1984).

There is thus a "distinction . . . between [i] misrepresentations with respect to the value of a security, and [ii] misrepresentations with respect to a party's intention to comply with a particular agreement." *Lankau v. Luxoft Holding, Inc.*, 266 F. Supp. 3d 666, 679 (S.D.N.Y. 2017) (quoting

*Dubin v. E.F. Hutton Grp. Inc.*, 695 F. Supp. 138, 144 (S.D.N.Y. 1988)). The former states a securities fraud claim whereas the latter does not. *Id.*; *see also Vekaria v. Mthree Corp. Consulting, Ltd.*, 2023 WL 6387275, at *7 (S.D.N.Y. Sept. 30, 2023) ("Excluded from the ambit of Section 10(b) . . . are claims predicated on allegations of fraud related only to the defendant's refusal to transfer promised shares."); *Hunt v. Robinson*, 852 F.2d 786, 787 (4th Cir. 1988) (finding no "causal connection between the alleged fraud and the purchase or sale of stock" when "[t]he alleged fraud lies, not in the actual sale of the stock, but rather in defendants' refusal to tender the shares as required by the terms of the contract" (internal quotation marks omitted)).

For example, in *Vekaria v. Mthree Corp. Consulting, Ltd.*, the court dismissed the plaintiff's § 10(b) claim where he alleged that he was owed stock under his employment agreement, but that the defendants fraudulently refused to issue the stock to him. *Vekaria*, 2023 WL 6387275, at *2; *see also id.* at *8. In so doing, the court held that the complaint lacked an "allegation that the . . . [d]efendants' conduct misrepresented or affected the value of the company's stock or otherwise concerned the characteristics or attributes that would induce an investor to buy or sell that stock." *Id.* Without an allegation that the defendants misrepresented the value of its stock, the court dismissed the plaintiff's claim because the alleged fraud was not "in connection with the purchase or sale of" a security. *Id.*

Similarly, in *Lankau v. Luxoft Holding, Inc.*, the plaintiff's § 10(b) claim was dismissed because "the Complaint allege[d] not that [the defendants] failed to inform [the plaintiff] of the truthful conditions of equity ownership once possessed, . . . but rather that [the defendants] failed to provide the shares in accordance with the contested Employment Agreement." *Lankau*, 266 F. Supp. 3d at 679. Although the plaintiff was given assurances that his compensation would include

a stock options award, *id.* at 671, the defendants' "alleged fraudulent statements [were] not connected to a sale of securities," and the plaintiff's claim thus failed, *id.* at 679.

Rodgers-King's Amended Complaint suffers from the same shortcomings. He alleges that he was to receive stock options as part of his compensation, and that these stock options were his central motivation for leaving his prior job. *See* Am. Compl. ¶¶ 19–20, 67. He also alleges that Candy made misrepresentations about his role to induce him to accept the offer of employment, but that he was terminated before the options could vest. *Id.* ¶¶ 113–14, 116. He does not, however, allege that Candy misrepresented the value of its stock or the stock options, nor that Candy misrepresented the characteristics or attributes that would induce an investor to buy or sell that stock.

In opposing Candy's motion, Rodgers-King relies on *Dubin v. E.F. Hutton Grp. Inc.*, 695 F. Supp. 138 (S.D.N.Y. 1988) and *Wharf (Holdings) Ltd. v. United Int'l Holdings, Inc.*, 532 U.S. 588 (2001). Opposition to Defendant's Motion to Dismiss ("Opp. Mot.") at 4–5. Neither supports his position. In *Dubin*, the plaintiff received company stock through the company's equity ownership plan upon his employment. *Dubin*, 695 F. Supp. at 140. The stock was to vest over a six-year period, and if the defendant was subject to a takeover, then all the stock was to vest. *Id.* The defendant, however, misrepresented the latter to the plaintiff, and when the defendant was acquired, the plaintiff's stock did not vest. *Id.* at 141–42. The court explained that "an employer who induced an employee to accept employment, at least in part on the basis of the employer's promises of stock and stock options," could be held liable when the value of the stock options had been misrepresented. *Id.* at 144. In contrast, if "[t]he fraud alleged had nothing to do with any particular security but related only to [the defendant's] intention not to comply with the agreement," then the defendant would not be liable under § 10(b). *Id.* at 145 (quoting *Yoder v.*

*Orthomolecular Nutrition Inst., Inc.*, 751 F.2d 555, 560–61 (2d Cir. 1985)). In *Dubin*, the defendant's misrepresentations were related to the particular securities in question because the defendant misrepresented the value of the stock options. *Id.* at 147 n.3; *see also id.* at 147 ("Like conditions which restrict the transferability of stock or restrict the exercise . . . of stock option rights, the conditions of the . . . Plan affecting vesting of stock or stock options substantially affected the value of the security to its holder."). Here, by contrast, the alleged misrepresentations are unrelated to the value of Rodgers-King's stock options as the misrepresentations solely concern Rodgers-King's "position and the resources he would have to perform his work for [Candy]," Am. Compl. ¶ 112, together with Candy's "intention not to comply with" its alleged promises as to Rodgers-King's role, *see Dubin*, 695 F. Supp. at 145 (quoting *Yoder*, 751 F.2d at 560–61).

Rodgers-King's reliance on *Wharf (Holdings) Ltd.* is also misplaced. In *Wharf (Holdings) Ltd.*, the defendant sold the plaintiff an option to buy stock. *Wharf (Holdings) Ltd.*, 532 U.S. at 590–91. The defendant, however, "secretly intended not to permit [the plaintiff] to exercise the option." *Id.* at 590. The Supreme Court found that the secret reservation misled the plaintiff as to the option's value, and thus fell within § 10(b). *Id.* at 596. Rodgers-King's Amended Complaint does not allege a similar secret reservation as to the exercise of his stock options. Rather, the Amended Complaint alleges that Candy did not intend to fulfil its promises as to Rodgers-King's role at Candy. Am. Compl. ¶ 114. *Wharf (Holdings) Ltd.* is thus inapposite because the alleged promises do not concern the stock options, but Rodgers-King's role at Candy.

Accordingly, not only does the Amended Complaint fail to satisfy Rule 9(b), but the alleged misrepresentations were not made in connection with the sale of securities. The Court thus dismisses Count Five of the Amended Complaint.[2]

---

[2] Candy also argues that Rodgers-King failed to state a claim for securities fraud because he cannot show reliance as an at-will employee. Def Mot. at 9–10. Because the Court finds that the Amended Complaint does

## II.     Fraudulent Misrepresentation and Inducement

Candy next moves to dismiss Rodgers-King's claim for fraudulent misrepresentation and inducement. To state a claim for fraud under New York law, a plaintiff must allege "(1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001). As with a securities fraud claim, a plaintiff must satisfy Rule 9(b)'s heightened pleading standard, so "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)). The plaintiff must also "allege facts that give rise to a strong inference of fraudulent intent." *Id.* (quoting *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 52 (2d Cir. 1995)).

The Amended Complaint fails to state with sufficient particularity the circumstances constituting the fraud. While Rodgers-King alleges that "[t]he specific misrepresentations made by [Candy] included statements by [Candy's] corporate officers including Mr. Fitzgerald, Mr. Laibowitz, and Mr. Lawin, [Candy's] CEO," and that "[t]hese individuals stated on several occasions (including but not limited to December 20, 2021) that the full scope of [Rodgers-King's] proper oversight of [Candy's] product organization would be given to [him] promptly," Am. Compl. ¶ 123, he fails to specify the location or method of communication of any particular statement or indeed provide any detailed statements at all, *see Schlenger v. Fid. Emp. Servs. Co., LLC*, 785 F. Supp. 2d 317, 352 (S.D.N.Y. 2011) ("Plaintiff's failure to name individuals, identify

---

not satisfy Rule 9(b) and that any misrepresentations were not made in connection with the sale of securities, the Court need not reach this argument.

detailed statements, or identify particular dates makes clear that as pleaded this claim lacks the specificity required by Rule 9."); *President Container Grp. II, LLC v. Systec Corp.*, 467 F. Supp. 3d 158, 165 (S.D.N.Y. 2020) ("[T]he Complaint fails to meet the particularity requirement because it does not specify the speaker, location, or method of communication."). The Amended Complaint does include one date, but it fails to specify who made a statement on that date. *See Optima Media Grp. Ltd. v. Bloomberg L.P.*, 383 F. Supp. 3d 135, 144 (S.D.N.Y. 2019) ("[The] failure to specify the speakers is problematic in itself."); *see also id.* (finding the allegation that misrepresentations occurred "up to and including on January 1, 2012" to be insufficiently specific). Nor is the Amended Complaint's allegation that statements were made on several occasions sufficiently specific. *See Rapay v. Chernov*, 2017 WL 892372, at *7 (S.D.N.Y. Mar. 6, 2017) (finding insufficient specificity where the plaintiff failed to "specify where and when the[] allegedly fraudulent statements were made; just that they were made 'repeatedly'").

In opposing Candy's motion to dismiss, Rodgers-King points to his allegation that "Fitzgerald indicated that . . . [Rodgers-King] was guaranteed to be the head of the product organization." Am. Compl. ¶ 21; Opp. Mot. at 6–7. This allegation too, however, does not specify where the statement was made or the statement's method of communication. Similarly, although Rodgers-King alleges that Laibowitz told him that the entire product management department would report to him, Am. Compl. ¶ 65, the Amended Complaint fails to state when and where the statement was made, as well as its method of communication. The allegations thus lack the requisite specificity.

In any event, the Amended Complaint fails to plausibly allege fraudulent intent. The alleged misrepresentations concern future promises as to the role Rodgers-King would occupy at Candy. *See* Am. Compl. ¶¶ 21, 123. Under New York law, there is a distinction between

"promissory statements as to what will be done in the future, which give rise only to a breach of contract claim, and . . . false representations of present fact, which give rise to a separable claim of fraudulent inducement." *Stewart v. Jackson & Nash*, 976 F.2d 86, 89 (2d Cir. 1992) (cleaned up); *see also Blanton v. Educ. Affiliates, Inc.*, 2022 WL 1505124, at *4 (2d Cir. May 12, 2022) ("[F]raud cannot be predicated upon statements which are promissory in nature at the time they are made and which relate to future actions or conduct." (quoting *Brown v. Lockwood*, 432 N.Y.S.2d 186, 194 (N.Y. App. Div. 1980))). That said, a promissory statement can nonetheless give rise to a fraudulent inducement claim if the party, "at the time it made the promise, knew that it did not intend to fulfill it." *Stewart*, 976 F.2d at 89 (internal quotation marks omitted).

Although Rule 9(b) permits "conditions of a person's mind [to] be alleged generally," Fed. R. Civ. P. 9(b), "this relaxation of the heightened pleading requirement is not to be mistaken 'for a license to base claims of fraud on speculation and conclusory allegations.'" *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 176 (2d Cir. 2015) (quoting *Lerner*, 459 F.3d at 290). Accordingly, "[t]o survive a Rule 12(b)(6) challenge, [the plaintiff] must state facts sufficient to 'give rise to a strong inference of fraudulent intent.'" *Id.* (quoting *Lerner*, 459 F.3d at 290). "The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that [the] defendant[] had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Lerner*, 459 F.3d at 290–91 (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)).

The allegations in the Amended Complaint do not give rise to a strong inference of fraudulent intent. Rodgers-King alleges, for example, that it was only when he was terminated in bad faith that he realized that Candy "had no intention of fulfilling its promises to [him]." Am.

Compl. ¶ 126. But "where the alleged misrepresentation concerns future conduct, the defrauded party must allege specific facts showing that the promisor intended not to honor her obligations at the time she made the statement," and "[t]he defrauded party may not satisfy this requirement simply by showing that the future event never occurred." *Stamelman v. Fleishman-Hillard, Inc.*, 2003 WL 21782645, at *7 (S.D.N.Y. July 31, 2003) (internal quotation marks omitted). Rodgers-King's allegation suggests only that the future promise never occurred, and not that Candy had fraudulent intent at the time it made the alleged misrepresentation.

Rodgers-King also alleges that during the application process, Fitzgerald and Laibowitz told him that he would have the entire product management department reporting to him, but that these promises were "lies." Am. Compl. ¶ 65. This conclusory allegation, however, lacks any factual basis for the assertion that Fitzgerald and Laibowitz had fraudulent intent at the time they made the alleged promises. *See Greene v. Gerber Prod. Co.*, 262 F. Supp. 3d 38, 73 (E.D.N.Y. 2017) ("Although '[g]reat specificity as to scienter is not required,' plaintiffs 'have the burden of pleading circumstances that provide at least a minimal factual basis for their conclusory allegations of scienter.'" (quoting *Glidepath Holding B.V. v. Spherion Corp.*, 590 F. Supp. 2d 435, 454 (S.D.N.Y. 2007))); *see also Amorosa v. Gen. Elec. Co.*, 2023 WL 3847161, at *3 (S.D.N.Y. June 6, 2023) (rejecting the plaintiff's argument that the defendants' false statements were "[themselves] probative of scienter" as "circular" and "without merit" (cleaned up)). Rodgers-King contends that the fact that Candy interviewed and hired multiple people in project management roles is further exhibitive of fraudulent intent. *See* Opp. Mot. at 7–8. Yet given the ambiguity in the Amended Complaint as to when Fitzgerald and Laibowitz made the alleged misrepresentations, the title of the new employees, and the dates they were interviewed and hired, Candy's hiring of several "product management personnel" does not plausibly raise an inference

that Candy intended to mislead Rodgers-King. *See* Am. Compl. ¶¶ 27–28, 65. Moreover, Rodgers-King was expressly informed—at the same time that Fitzgerald allegedly told him that he would head product organization—that there would be another Vice President of Product, and that both himself and the other Vice President of Product would report to Laibowitz. *See id.* ¶ 21. Rodgers-King additionally relies on Candy's decision to hire Winowich as Head of Product, *see* Opp. Mot. at 8; Am. Compl. ¶ 30, but Candy's subsequent reorganization of the product management team does not raise a strong inference of fraudulent intent, *id.* ¶¶ 44–46, given that the alleged promise would not constitute fraud unless, "at the time the promissory representation was made, [Candy] never intended to honor or act on [its] statement," *see Tianbo Huang v. iTV Media, Inc.*, 13 F. Supp. 3d 246, 261 (E.D.N.Y. 2014) (quoting *Abernathy-Thomas Eng'g Co. v. Pall Corp.*, 103 F. Supp. 2d 582, 596 (E.D.N.Y. 2000)).

Although a strong inference of fraudulent intent can be established by alleging facts that demonstrate that a defendant had the motive and opportunity to commit fraud, *see Lerner*, 459 F.3d at 290–91, Rodgers-King also fails to plausibly allege facts that show motive. To be sure, Rodgers-King alleges that Candy "made deliberately false statements" in order to induce him to join Candy "long enough to use his industry knowledge." Am. Compl. ¶ 122. Motive, however, "entail[s] concrete benefits that could be realized by one or more of the false statements . . . alleged," *Shields*, 25 F.3d at 1130, and "[g]eneral allegations that the defendant[] acted in [its] economic self-interest are not enough," *Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 170 (2d Cir. 2000). Rodgers-King's conclusory allegation fails to detail the concrete benefits that Candy would realize from its alleged fraud. *See Stamelman v. Fleishman-Hillard, Inc.*, 2003 WL 22516949, at *2 (S.D.N.Y. Nov. 6, 2003) (finding that the plaintiff's "initial complaint failed because it did not properly allege 'concrete benefits' that [the defendant] enjoyed as a result of its

fraud—a necessary component of pleading motive"); *cf. Chimarev v. TD Waterhouse Inv. Servs., Inc.*, 280 F. Supp. 2d 208, 216 (S.D.N.Y. 2003), *aff'd*, 99 F. App'x 259 (2d Cir. 2004) ("[I]t is not inappropriate for an employee to be expected to transfer his know-how to other employees, nor is an expectation of such on the part of an employer legally actionable under New York law.").

Accordingly, the Court dismisses Count Six of the Amended Complaint.

## III.    Defamation Per Se

Candy further moves to dismiss Rodgers-King's claim for defamation per se. "Defamation is the injury to one's reputation either by written expression, which is libel, or by oral expression, which is slander." *McCollum v. Baldwin*, 2023 WL 5392684, at *5 (S.D.N.Y. Aug. 22, 2023) (quoting *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 456 (S.D.N.Y. 2012)). To state a claim for defamation under New York law, a plaintiff must allege "(1) a . . . defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability." *Palin v. New York Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019). The plaintiff must "identify the allegedly defamatory statements, the person who made the statements, the time when the statements were made, and the third parties to whom the statements were published." *Alvarado v. Mount Pleasant Cottage Sch. Dist.*, 404 F. Supp. 3d 763, 790 (S.D.N.Y. 2019) (quoting *Neal v. Asta Funding, Inc.*, 2014 WL 3887760, at *3 (S.D.N.Y. June 17, 2014)). "Mere conclusory statements that the claimant was disparaged by false statements are insufficient to state a defamation claim." *Neal*, 2014 WL 3887760, at *3 (quoting *Camp Summit of Summitville, Inc. v. Visinski*, 2007 WL 1152894, at *10 (S.D.N.Y. Apr. 16, 2007)).

Rodgers-King alleges that Candy told others that his performance had been a problem and that he had threatened to leave Candy. Am. Compl. ¶¶ 133–34. The Amended Complaint, however,

15

does not state who at Candy made the alleged statements, nor does it state when the statements were made. The Amended Complaint thus lacks the requisite specificity. *See Camp Summit of Summitville, Inc.*, 2007 WL 1152894, at \*12 (dismissing defamation counterclaim where the defendant did not allege "who at [the plaintiff] made the defamatory remarks, nor to whom the comments were made"); *Neal*, 2014 WL 3887760, at \*3 (holding that the "plaintiff's failure to identify the anonymous 'employee or agent of [the defendant]' responsible for making the statement is fatal to his claim"); *see also Ives v. Guilford Mills, Inc.*, 3 F. Supp. 2d 191, 199 (N.D.N.Y. 1998) (dismissing slander claim where the "plaintiff [did] not allege[] any specific places or times"); *Alvarado*, 404 F. Supp. 3d at 790 (holding that "merely alleging that a statement was made during a certain month does not suffice to meet the particularity requirement under New York law").

Moreover, aside from a generalized summary, the Amended Complaint provides little specificity as to the substance of Candy's alleged statements. Under New York law, "[i]n an action for libel or slander, the particular words complained of shall be set forth in the complaint." N.Y. C.P.L.R. § 3016(a). Although "the federal rules do not require the particularized pleading requirements set forth in New York's C.P.L.R. section 3016, Rule 8 of the Federal Rules of Civil Procedure still requires that each pleading be specific enough to afford [the] defendant sufficient notice of the communications complained of to enable him to defend himself." *Biro*, 883 F. Supp. 2d at 456 (cleaned up). The Court finds that these vague allegations do not afford Candy sufficient notice of the communications complained of. *See Alvarado*, 404 F. Supp. 3d at 791 (dismissing defamation claim where the plaintiff failed to plead the "particular words complained of"); *Thai v. Cayre Grp., Ltd.*, 726 F. Supp. 2d 323, 329 (S.D.N.Y. 2010) ("A defamation claim is only sufficient if it adequately identifies the purported communication." (internal quotation marks

omitted)); *Langella v. Mahopac Cent. Sch. Dist.*, 2022 WL 44776, at *11 (S.D.N.Y. Jan. 5, 2022) (holding that "the particular defamatory statements must be included in [the plaintiff's] complaint"); *cf. Tannerite Sports, LLC v. NBCUniversal News Grp., a division of NBCUniversal Media, LLC*, 864 F.3d 236, 251 (2d Cir. 2017) ("Vagueness as to the complained-of conduct is particularly inappropriate when pleading a defamation claim.").

The Court thus dismisses Count Seven of the Amended Complaint.[3]

### IV.    Intentional Infliction of Emotional Distress

Finally, Candy moves to dismiss Rodgers-King's claim for intentional infliction of emotional distress ("IIED") brought under New York law. The tort of IIED has four elements: "(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996). To state a claim for IIED, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Davydov v. Youssefi*, 205 A.D.3d 881, 883 (N.Y. App. Div. 2022) (quoting *Ratto v. Oliva*, 195 A.D.3d 870, 873 (N.Y. App. Div. 2021)). There is thus a high threshold for conduct to be sufficiently "extreme and outrageous" to constitute IIED. *Bender*, 78 F.3d at 790; *see also Ponticelli v. Zurich Am. Ins. Grp.*, 16 F. Supp. 2d 414, 440 (S.D.N.Y. 1998) ("The standard for extreme and outrageous conduct is extremely difficult to satisfy.").

---

[3] In its reply brief, Candy argues that Rodgers-King abandoned his defamation per se claim by failing to address Candy's arguments in its motion to dismiss. Defendant's Reply Memorandum of Law in Further Support of Defendant's Partial Motion to Dismiss at 8–9; *see also Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, 2014 WL 4723299, at *7 (S.D.N.Y. Sept. 23, 2014) ("At the motion to dismiss stage, . . . a plaintiff abandons a claim by failing to address the defendant's arguments in support of dismissing that claim."). Because the Court finds that Rodgers-King failed to state a claim for defamation, the Court need not reach this argument.

"The determination [of] whether the requisite outrageousness has been established is, in the first instance, an issue of law for the courts." *Cavallaro v. Pozzi*, 28 A.D.3d 1075, 1078 (N.Y. App. Div. 2006). Courts have sustained IIED claims in circumstances which have "involved some combination of public humiliation, false accusations of criminal or heinous conduct, verbal abuse or harassment, physical threats, permanent loss of employment, or conduct contrary to public policy." *Stuto v. Fleishman*, 164 F.3d 820, 828 (2d Cir. 1999). Moreover, "[i]n employment discrimination cases, New York courts have only rarely found complaints alleging intentional infliction of emotional distress sufficient to survive a Rule 12(b)(6) motion to dismiss." *Ifill v. United Parcel Serv.*, 2005 WL 736151, at *6 (S.D.N.Y. Mar. 29, 2005).

Rodgers-King argues that Candy's conduct was extreme and outrageous because it deceived him about his role and discriminated against him by excluding him from key business discussions, preventing him from obtaining the necessary resources, failing to promote him, and terminating him. *See* Opp. Mot. at 10–11; Am. Compl. ¶¶ 84, 90, 141. These allegations fail to state an IIED claim. *See Lydeatte v. Bronx Overall Econ. Dev. Corp.*, 2001 WL 180055, at *2 (S.D.N.Y. Feb. 22, 2001) (dismissing the plaintiff's IIED claim where the plaintiff alleged that the "defendant was biased against her based on her race, that she was harassed and treated poorly on the job, and that she was denied the same benefits, opportunities and conditions of employment as her Hispanic co-workers until she was ultimately wrongfully terminated"); *Ibraheem v. Wackenhut Servs., Inc.*, 29 F. Supp. 3d 196, 215 (E.D.N.Y. 2014) ("Generally, ordinary workplace disputes, including . . . discrimination, harassment, and hostile work environment claims . . . , do not rise to the level of extreme and outrageous conduct necessary to support a claim of IIED.").

The Court thus dismisses Count Eight of the Amended Complaint.

V.      **Leave to Amend**

Under Federal Rule of Civil Procedure 15, "[t]he court should freely give leave [to amend]
when justice so requires." Fed. R. Civ. P. 15(a)(2). This is a "permissive standard," *Loreley Fin.
(Jersey) No. 3 Ltd.*, 797 F.3d at 190 (quoting *Williams v. Citigroup Inc.*, 659 F.3d 208, 212–13 (2d
Cir. 2011)), and "it is within the sound discretion of the district court to grant or deny leave to
amend," *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).

Candy moves to dismiss Rodgers-King's claims of securities fraud, fraudulent
misrepresentation and inducement, defamation per se, and IIED with prejudice, Def. Mot. at 19,
and Rodgers-King has not requested leave to amend. When a plaintiff does not request leave to
amend the complaint, "a district court may decline to grant leave to amend *sua sponte*." *Bright-
Asante v. Wagner*, 2017 WL 6948359, at *10 (S.D.N.Y. Dec. 1, 2017); *see also Shields*, 25 F.3d
at 1132 ("Although federal courts are inclined to grant leave to amend following a dismissal order,
we do not deem it an abuse of the district court's discretion to order a case closed when leave to
amend has not been sought."); *Chen v. Antel Commc'ns, LLC*, 653 F. App'x 43, 44 (2d Cir. 2016)
(same). That said, "[o]rdinarily a plaintiff should be granted leave to amend at least once after
having the benefit of a court's reasoning in dismissing the complaint." *Obra Pia Ltd. v. Seagrape
Invs. LLC*, 2021 WL 1978545, at *3 (S.D.N.Y. May 18, 2021). "This is especially true on the
Court's first ruling on a motion to dismiss." *United States ex rel. Hart v. McKesson Corp.*, 602 F.
Supp. 3d 575, 599 (S.D.N.Y. 2022). Indeed, "[w]ithout the benefit of a ruling, many a plaintiff
will not see the necessity of amendment or be in a position to weigh the practicality and possible
means of curing specific deficiencies." *Loreley Fin. (Jersey) No. 3 Ltd.*, 797 F.3d at 190.

Although the Court is skeptical that Rodgers-King will be able to plausibly allege a cause
of action for securities fraud, fraudulent misrepresentation and inducement, defamation per se, or

IIED, the Court nonetheless grants him leave to file a Second Amended Complaint to address the inadequacies discussed herein as to Counts Five, Six, Seven, and Eight—provided he has a good faith basis to do so.

## CONCLUSION

For the foregoing reasons, Candy's motion to dismiss is granted, albeit with leave to amend. If he chooses to do so, Rodgers-King may file a Second Amended Complaint no later than March 4, 2024. The Clerk of Court is respectfully directed to terminate the motion pending at ECF No. 14.

SO ORDERED.

Dated:          February 1, 2024
                New York, New York

                                            Ronnie Abrams
                                            United States District Judge